*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1668**

Deron Eron Puro, petitioner,
Appellant,

vs.

Commissioner of Public Safety,
Respondent.

**Filed July 5, 2016
Affirmed
Halbrooks, Judge**

Scott County District Court
File No. 70-CV-15-12209

Deron Eron Puro, Chaska, Minnesota (pro se appellant)

Lori Swanson, Attorney General, Frederic J. Argir, Assistant Attorney General, St. Paul, Minnesota (for respondent)

Considered and decided by Worke, Presiding Judge; Halbrooks, Judge; and Smith, Tracy M., Judge.

## UNPUBLISHED OPINION

**HALBROOKS**, Judge

Appellant challenges the district court's order sustaining the revocation of his driving privileges under Minnesota's implied-consent law. He argues that the police lacked probable cause to believe that he was in physical control of a motor vehicle when

an officer found him sleeping in the driver's seat with the keys to the vehicle between his feet. We affirm.

## FACTS

On May 31, 2015, appellant Deron Puro went to a restaurant and consumed alcohol. Around 4:00 p.m., a bartender from the restaurant asked Puro to leave because he had had too much to drink. Puro left the restaurant and made his way to his wife's Subaru that was parked in the restaurant's lot. He got into the driver's seat and either passed out or fell asleep.

The manager of the restaurant called the police around 8:00 p.m. to report that a male was passed out in a Subaru in the parking lot. The manager provided the police with the car's license-plate information. Officer Robert Calvin responded to the call. When he arrived, the officer saw Puro sitting in the driver's seat of the parked Subaru with the license plate that was reported by the manager. The car's engine was not running. The officer approached and tapped on the window to try to wake Puro. Puro was startled by the officer. Puro opened the car door to speak with him. The officer asked Puro where the car keys were. Puro responded by picking them up off of the floor of the car from in between his feet and handing them to the officer.

Puro was arrested for driving while impaired, and his driving privileges were revoked based on test refusal. Puro petitioned the district court to order the commissioner to reinstate his driving privileges. Puro stipulated that he was under the influence of alcohol. The only issue before the district court was whether the police had probable cause to believe that Puro was "in physical control" of the Subaru as the phrase

is used in Minn. Stat. § 169A.51, subd. 1 (2014). The district court concluded that the state proved by a preponderance of the evidence that Puro was in physical control of the vehicle and sustained the commissioner's order revoking Puro's driving privileges. This appeal follows.

## D E C I S I O N

Puro argues the district court erred by concluding that the officer had probable cause to believe that under Minn. Stat. § 169A.51, subd. 1, he was in physical control of the Subaru. The statute provides:

> Any person who drives, operates, or is in physical control of a motor vehicle within this state or on any boundary water of this state consents . . . to a chemical test of that person's blood, breath, or urine for the purpose of determining the presence of alcohol, a controlled substance or its metabolite, or a hazardous substance.

Minn. Stat. § 169A.51, subd. 1(a). If the person refuses the test when the police have "probable cause to believe the person had been driving, operating, or in physical control of a motor vehicle in violation of section 169A.20 (driving while impaired) . . . [then] the commissioner shall revoke the person's license or permit to drive." Minn. Stat. § 169A.52, subd. 3(a) (2014).

A person who has his license revoked may petition for a review hearing before a district court judge. Minn. Stat. § 169A.53, subd. 2(a) (2014). At the hearing, the petitioner may challenge whether "the peace officer ha[d] probable cause to believe the person was driving, operating, or in physical control of a motor vehicle . . . in violation of section 169A.20 (driving while impaired)." *Id.*, subd. 3(b)(1) (2014). Probable cause is a

question of law that we review de novo when the facts of the case are undisputed. *Shane v. Comm'r of Pub. Safety*, 587 N.W.2d 639, 641 (Minn. 1998).

Under Minnesota's implied-consent law, the state may revoke a person's license if he is in physical control of a vehicle in order to "deter intoxicated persons from getting into vehicles except as passengers and to act as a preventive measure to enable the drunken driver to be apprehended before he strikes." *State v. Fleck*, 777 N.W.2d 233, 236 (Minn. 2010) (quotation omitted). The term "in physical control" includes "when an intoxicated person is found in a parked vehicle under circumstances in which the vehicle, without too much difficulty, might again be started and become a source of danger to the operator, to others, or to property." *Id.* (alteration omitted) (quotation omitted). A person is in physical control of a vehicle if the person has the means to initiate any movement and is close to the operating controls of the vehicle. *Id.*

But a person is not in physical control when the person has "relinquished control of the vehicle to a designated driver." *Id.* And presence in the vehicle by itself is not enough to show physical control. *Id.* This court examines the overall situation to make the determination, which includes the examination of a number of factors "including: the person's location in proximity to the vehicle; the location of the keys; whether the person was a passenger in the vehicle; who owned the vehicle; and the vehicle's operability." *Id.* Whether a person intends to drive is not part of the analysis in determining if the person was in physical control. *Id.* at 237.

The circumstances in which the officer found Puro are very similar to the circumstances in *State v. Fleck*. Fleck was found in his operable car alone, intoxicated,

4

and asleep. *Id.* The car was legally parked, and the car keys, which were in the car's center console, were readily accessible to him. *Id.* at 235, 237. The supreme court held that those circumstances constituted sufficient evidence for the jury to conclude that Fleck was in physical control of the motor vehicle. *Id.* at 237.

Here, the officer found Puro alone, intoxicated, and asleep or passed out in the legally parked and operable Subaru. Puro, like Fleck, was in the driver's seat. The keys, which were on the floor between his feet, were readily accessible to him. He could have picked up the keys, started the vehicle, and tried to drive home.

Puro argues that this case is more like *City of Falcon Heights v. Pazderski*, 352 N.W.2d 85 (Minn. App. 1984). We disagree. In *Pazderski*, Ronald Pazderski and his girlfriend had a "domestic quarrel." 352 N.W.2d at 86. After the quarrel, Pazderski went out to two neighborhood taverns and consumed alcohol. *Id.* He then drove home, parked his car in a parking area near his garage, and walked into his house. *Id.* After taking a couple of steps into the home, he decided it was best to avoid a potential argument with his girlfriend and returned to his car to sleep for the night. *Id.* There was evidence in the record that Pazderski had a history of using his car as a place to sleep. *Id.* at 87. Pazderski's girlfriend woke up in the middle of the night and called the police because she saw Pazderski's car but did not see him. *Id.* at 86-87. The police arrived and found Pazderski intoxicated and asleep in his car. *Id.* at 87.

The state charged him with being in physical control of a motor vehicle while under the influence of alcohol, a misdemeanor criminal offense. *Id.* at 86 (citing Minn. Stat. § 169.121, subd. 1 (Supp. 1983)). Pazderski opted for a bench trial on the sole issue

of whether he was in physical control of the vehicle. *Id.* at 86-87. The district court found him "guilty of being in actual physical control of a motor vehicle while under the influence." *Id.* at 87.

This court reversed the district court's decision, concluding that the state had not proved beyond a reasonable doubt that Pazderski was in physical control of the car. *Id.* at 89. We reasoned that what differentiated *Pazderski* from other cases was that he was not "found somewhere on a highway road or private property in a setting giving support to a fair inference that the driver was short of his intended destination and, if left alone, might restart the vehicle in an intoxicated state and continue on." *Id.* at 88. This court was convinced that Pazderski selected his car to sleep in just as he could have opted for "a tent or summer screen house in his back yard." *Id.*

This case is distinguishable from *Pazderski*. Here, the officer only needed to have probable cause (as opposed to proof beyond a reasonable doubt) in order for Puro's license to be revoked. Puro was asleep in a car that was parked in a restaurant parking lot. Puro argues that under *Pazderski*, the state had to prove he intended to drive to show that he was in physical control of the Subaru and that he, like Pazderski, had no intention of driving. But Minnesota appellate courts have consistently held that intent is not a factor in determining whether a person is in physical control of a motor vehicle. *See, e.g.*, *Fleck*, 777 N.W.2d at 237. We therefore conclude that the officer had probable cause to believe that Puro was in physical control of the Subaru and the district court did not err in sustaining the revocation of his driving privileges.

**Affirmed.**

6